**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. _____

DASLYN HALL,                                    )
                                                )
                    Plaintiff,                  )
                                                )
        v.                                      )
                                                )
CAPITAL ONE AUTO FINANCE a division             )
of CAPITAL ONE, NATIONAL                         )
ASSOCIATION, TRANS UNION, LLC, and              )
MODERN AUTO SALES, INC.,                        )
                                                )
                    Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Daslyn Hall sues Defendants Capital One Auto Finance, a division of Capital One, National Association ("Capital One"); Trans Union, LLC ("Trans Union"); and Modern Auto Sales, Inc. ("Modern Auto") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").

**PARTIES**

1.      Plaintiff Daslyn Hall is an individual and citizen of the State of Florida who resides in Miami-Dade County, Florida.

2.      Trans Union is a foreign limited liability company with its principal address at 555 West Adams St., Chicago, Illinois 60661.

3.      Modern Auto is a Florida for-profit corporation with its principal place of business at 126 N State Road 7, Hollywood, FL 33021.

4.      Capital One is a National Association with its principal place of business in Alexandria, Virginia.

1

## JURISDICTION AND VENUE

5.      This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the FCRA, a federal statute.

6.      Venue is proper because Plaintiff resides in Miami-Dade County, Florida and the acts and conduct complained of occurred in Miami-Dade County, Florida.

## FACTUAL ALLEGATIONS

**The Fraudulent Transaction**

7.      On January 4, 2025, Plaintiff's sister, Dayana Hall, and Dayana Hall's boyfriend, Gerson R. St. Louis, appeared at Modern Auto Sales, 126 N. State Road 7, Hollywood, Florida 33023.

8.      Dayana Hall presented Plaintiff's personal identifying information to Modern Auto's personnel—including Plaintiff's expired, superseded driver's license.

9.      The photograph on Plaintiff's driver's license depicted Plaintiff, not Dayana Hall.

10.      A Modern Auto employee conducting even cursory examination of the license would have observed that the individual presenting the license did not match the photograph on it.

11.      Using Plaintiff's identity, Dayana Hall entered into a retail installment contract for the purchase of a 2023 Nissan automobile and obtained auto financing through Capital One Auto Finance in Plaintiff's name (the "Fraudulent Account").

12.      Dayana Hall forged Plaintiff's signature on all transaction documents.

13.      Plaintiff was not present at Modern Auto on January 4, 2025, when the transaction occurred.

14.      Plaintiff did not participate in, authorize, or have any prior knowledge of the transaction.

15.     Plaintiff received no proceeds from the sale, never took delivery of the vehicle, and has never operated or possessed it.

16.     Plaintiff did not authorize anyone, including Dayana Hall, to use her identity, her personal information, or her credit to obtain a vehicle or consumer financing.

17.     Plaintiff had no knowledge that Dayana Hall had stolen her personal identifying information and used it to buy and finance a vehicle.

**Modern Auto's Impermissible Credit Pull**

18.     Modern Auto is a sophisticated motor vehicle dealer regularly engaged in selling vehicles and originating consumer credit agreements.

19.     In connection with the January 4, 2025, transaction, Modern Auto caused or facilitated the procurement of a consumer report on Plaintiff from one or more consumer reporting agencies.

20.     Plaintiff had not initiated any credit transaction with Modern Auto Sales.

21.     Plaintiff had not authorized Modern Auto Sales or any of its agents to obtain a consumer report in her name.

22.     Modern Auto had no permissible purpose to obtain a consumer report on Plaintiff.

23.     The transaction was not initiated by Plaintiff.

24.     The person presenting Plaintiff's identification was not Plaintiff.

25.     And the identification offered was expired and superseded—on its face, a red flag for identity misuse that a dealer exercising reasonable diligence would have investigated before pulling credit.

26.     Because Modern Auto had reason to know at the time of the transaction that the person presenting Plaintiff's identification was not Plaintiff, Modern Auto lacked any good-faith

basis to believe the procurement of Plaintiff's consumer report was authorized for a permissible purpose.

27. Modern Auto's procurement of Plaintiff's consumer report under these circumstances was either willful or, in the alternative, the product of negligent failure to exercise reasonable diligence in verifying the identity of the purported customer before running a credit inquiry.

**Discovery of the Fraud and Initial Dispute**

28. On February 17, 2025, Plaintiff received an email notification from Capital One advising of a payment due on an automobile loan she did not recognize.

29. Plaintiff contacted Capital One and learned for the first time that a Capital One Auto Finance account had been opened in her name on January 4, 2025, for the purchase of a 2023 Nissan at Modern Auto Sales in Hollywood, Florida.

30. On February 18, 2025, Plaintiff filed a police report with the Hollywood Police Department identifying the transaction as identity theft.

31. On March 21, 2025, Plaintiff provided a formal sworn victim statement to Hollywood Police Department detectives, confirming under oath that her sister Dayana Hall had used Plaintiff's personal identifying information without authorization to purchase the vehicle.

32. On April 19, 2025, Plaintiff submitted a written dispute to Trans Union identifying the Capital One Auto Finance account as the product of identity theft.

33. The dispute included the Hollywood Police Department police report and Capital One lender documentation, and demanded deletion of the account and all associated hard inquiries.

34. Trans Union forwarded Plaintiff's dispute to Capital One through the E-OSCAR Automated Consumer Dispute Verification ("ACDV") system.

35. On information and belief, Trans Union transmitted the ACDV without independently contacting the Hollywood Police Department, Modern Auto Sales, or any law enforcement entity, and without transmitting to Capital One the documentary evidence—including the police report—that Plaintiff had provided.

**Trans Union and Capital One verify the Fraudulent Account as Accurate**

36. On May 10, 2025, TransUnion notified Plaintiff that its investigation had been completed and that the Capital One Auto Finance account had been verified as "accurate."

37. Trans Union did not conduct a reasonable investigation into Plaintiff's dispute.

38. On information and belief, Trans Union maintains a systematic policy of resolving consumer disputes—including identity theft disputes supported by police reports and FTC Identity Theft Reports—through the automated ACDV process, without independent human review of the underlying documentation.

39. On information and belief, TransUnion's reinvestigation consisted of the transmission of an ACDV to Capital One through the E-OSCAR system and the acceptance of Capital One's verification response.

40. TransUnion did not independently contact the Hollywood Police Department, Modern Auto Sales, or any law enforcement entity.

41. TransUnion did not conduct any independent verification of the documentary evidence Plaintiff had provided.

42. As a result, TransUnion did not delete the Capital One account from Plaintiff's credit report.

43. In May 2025, Capital One began reporting the fraudulent account as delinquent on Plaintiff's credit reports.

44.     On May 21, 2025, Hollywood Police Department detectives arrested Gerson R. St. Louis.

45.     St. Louis confirmed without equivocation that he and his girlfriend, Dayana Hall, had gone to Modern Auto Sales to purchase a vehicle and that Dayana Hall used Plaintiff's personal information to complete the transaction.

46.     On May 22, 2025, Hollywood Police notified Capital One representative Nelson Pitre by email that the fraudulently purchased vehicle was in the custody of Superior Towing in Davie, Florida.

47.     On May 21, 2025, Plaintiff mailed a second written dispute to TransUnion challenging Trans Union's confirmation that the Capital One account was the product of identity theft, identifying Dayana Hall as the perpetrator, demanding independent contact with both Modern Auto Sales and Capital One, and demanding permanent deletion of the account and all associated hard inquiries.

48.     Plaintiff enclosed her FTC Identity Theft Report, Reference Number 187689446.

49.     On June 2, 2025, Capital One issued a written determination letter to Plaintiff stating: "We investigated your fraud/identity theft claim and have determined that the claim is not valid based on the information provided to us for our review."

50.     At the time of that determination, the following facts were known to Capital One or available to it upon reasonable inquiry: (a) Plaintiff had filed a police report on February 18, 2025; (b) law enforcement had reviewed surveillance footage of the Fraudulent Transaction; (c) Gerson R. St. Louis had been arrested on April 10, 2025, while operating the fraudulently financed vehicle; (d) St. Louis had provided a recorded confession on May 21, 2025, confirming that

6

Dayana Hall used Plaintiff's personal information to complete the transaction; and (e) the vehicle had been recovered and was in a towing company's custody.

51. Upon information and belief, Capital One did not contact the Hollywood Police Department, did not contact Modern Auto Sales, and did not contact Plaintiff during its investigation of Plaintiff's dispute.

52. Instead, Capital One reviewed only its own records, generated from the fraudulent application, and determined that the resulting loan was valid.

53. The Fraudulent Account remained in Plaintiff's consumer credit file and was actively reported as Plaintiff's valid obligation for approximately fifty-four days following Plaintiff's first dispute on April 19, 2025, through the date of deletion on June 12, 2025.

54. All conditions precedent to initiating and maintaining this action have occurred or have otherwise been waived.

### COUNT I – MODERN AUTO'S VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. §§ 1681b(f) and 1681n

55. Modern Auto Sales is a person within the meaning of 15 U.S.C. § 1681a(b) and a user of consumer reports within the meaning of § 1681b(f).

56. Section 1681b(f) of the FCRA provides: "A person shall not use or obtain a consumer report for any purpose unless — (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification."

57. Modern Auto Sales, in connection with the Fraudulent Transaction on January 4, 2025, caused or facilitated the procurement of a consumer report bearing Plaintiff's name and personal identifying information from one or more consumer reporting agencies.

58.     Modern Auto is liable under the FCRA for obtaining or using a consumer report on Plaintiff without a permissible purpose and for obtaining Plaintiff's information from a credit agency under false pretenses. 15 U.S.C. §§ 1681b(f), 1681q.

59.     No permissible purpose authorized Modern Auto Sales to obtain a consumer report on Plaintiff in connection with the January 4, 2025, transaction.

60.     Modern Auto knew or had reason to know, at the time it obtained the consumer report, that the transaction was fraudulent and thus no permissible purpose existed.

61.     Because Modern Auto Sales had reason to know at the time of the Fraudulent Transaction that the person presenting Plaintiff's identification was not Plaintiff, Modern Auto Sales lacked a good-faith basis to believe that the procurement of Plaintiff's consumer report was authorized for a permissible purpose.

62.     Modern Auto's violation was willful within the meaning of 15 U.S.C. § 1681n.

63.     Obtaining a consumer report from a person presenting an expired, photo-mismatched identification for a transaction the consumer never initiated reflects reckless disregard of Modern Auto's statutory obligations and of the risk of harm to the consumer whose report was pulled without authorization.

64.     In the alternative, Modern Auto Sales's conduct constituted negligent noncompliance within the meaning of 15 U.S.C. § 1681o.

65.     As a direct and proximate result of Modern Auto Sales's violations, Plaintiff suffered actual damages, including a hard inquiry in Plaintiff's consumer credit file reducing Plaintiff's credit score, harm to Plaintiff's credit reputation and credit score due to the negative credit reporting; Plaintiff suffered significant and ongoing emotional distress, anxiety, humiliation, and mental anguish resulting from: (i) discovering that her own sister had stolen and exploited her

identity; (ii) filing a police report, providing a sworn victim statement, and participating in a criminal investigation; (iii) receiving Capital One's written denial of her fraud claim notwithstanding overwhelming corroborating evidence; and (iv) the knowledge that a debt she never incurred and a credit inquiry she never authorized were being reported to prospective creditors as her legitimate obligations.

66.     Plaintiff expended substantial personal time and out-of-pocket resources filing the police report, drafting and mailing dispute correspondence, providing a sworn victim statement, monitoring her credit, and coordinating with law enforcement in connection with the criminal investigation; and consequential harm flowing from the origination of the Fraudulent Account that Modern Auto Sales's impermissible pull enabled, including the fifty-four days of inaccurate tradeline reporting to which Plaintiff was subjected as a result.

67.     Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT II – TRANS UNION'S VIOLATION OF THE FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681i

68.     Plaintiff is a natural person and therefore a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

69.     Trans Union is a consumer reporting agency as defined by FCRA, 15 U.S.C. §1681a(f).

70.     Trans Union has prepared and issued consumer credit reports concerning Plaintiff which have included information about the fraudulent account.

71.     Plaintiff disputed the Fraudulent Account in writing directly with Trans Union on April 19, 2025, and again on May 21, 2025. Each dispute was supported by documentary evidence, including a police report specifically identifying Dayana Hall as the perpetrator.

72. Neither dispute was frivolous.

73. Section 1681i(a)(1)(A) required Trans Union, upon receiving Plaintiff's dispute, to conduct a reasonable reinvestigation of the disputed information. Section 1681i(a)(2) required Trans Union to promptly provide Capital One with all relevant information that Plaintiff submitted.

74. When a consumer submits a police report specifically identifying a named perpetrator as the source of a fraudulent account, reasonable reinvestigation requires independent verification — not a routine ACDV query to the same furnisher whose records were generated by the fraud.

75. Trans Union had no basis to treat the furnisher's confirmation of its own loan documents as meaningful corroboration when those very documents were the product of the crime Plaintiff had reported.

76. Trans Union did not independently contact the Hollywood Police Department, Modern Auto Sales, or any other source capable of corroborating or refuting Plaintiff's documented claim. Trans Union accepted Capital One's verification—a lender that had already reviewed only its own records and concluded its own loan was valid—as the dispositive answer.

77. On information and belief, Trans Union maintains a systematic policy of resolving consumer disputes—including identity theft disputes supported by police reports and FTC Identity Theft Reports—through the automated ACDV process without independent human review of the underlying documentation. Application of that policy to Plaintiff's documented identity theft dispute was neither reasonable nor lawful.

78. After receiving Plaintiff's dispute and verifying the Fraudulent Account as accurate, Trans Union continued to disseminate consumer reports about Plaintiff that included the inaccurate information to third parties.

79. As described above, Trans Union willfully or negligently violated 15 U.S.C. § 1681i in multiple ways including, without limitation, by not conducting a reasonable reinvestigation of Plaintiff's dispute and by failing to appropriately delete the information in Plaintiff's file.

80. Trans Union's violations of § 1681i caused Plaintiff actual damages, including, without limitation, a lowered credit score; lost opportunity to receive credit, damage to reputation, invasion of privacy, ongoing risk of credit denials, higher interest rates, and other adverse financial consequences; emotional distress, anxiety, frustration, and out-of-pocket expenses incurred in dealing with the continued reporting of the fraudulent account and repeat disputes.

81. Plaintiff has spent substantial time and effort trying to correct the record, including preparing multiple disputes, compiling documentation, communicating with credit bureaus and legal counsel, and monitoring her credit reports—all of which would have been unnecessary had Trans Union fulfilled its legal duties.

82. The continued presence of the inaccurate account on Plaintiff's credit report created ongoing anxiety, reputational harm, and fear of further collection activity—despite Plaintiff being a victim of fraud through no fault of her own.

83. Because Trans Union's conduct was willful and reflects reckless disregard of its § 1681i obligations and the rights of identity theft victims, Trans Union is liable for actual damages, statutory damages, and punitive damages under 15 U.S.C. § 1681n.

84. In the alternative, Trans Union is liable for actual damages under 15 U.S.C. § 1681o.

85. Plaintiff is entitled to recover costs and attorney's fees from Trans Union pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT III - CAPITAL ONE'S VIOLATION OF THE**
**FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)**

11

86. Plaintiff is a natural person and therefore a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

87. Capital One is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

88. Upon receiving Plaintiff's April 19, 2025, dispute from Trans Union, Capital One was obligated under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation of the disputed information, review all relevant information provided by Trans Union, and report the results to Trans Union accurately.

89. Capital One's investigation was unreasonable.

90. A reasonable investigation would have included, at a minimum: independent contact with the Hollywood Police Department; independent contact with Plaintiff; and independent contact with Modern Auto Sales.

91. On information and belief, Capital One performed none of these steps.

92. Instead, Capital One reviewed only its own origination records—records generated from the fraudulent application—confirmed their facial completeness, and on June 2, 2025, issued a written denial stating that Plaintiff's fraud claim was not valid.

93. Capital One's denial is remarkable on its face. By June 2, 2025, law enforcement had reviewed surveillance footage of the fraudulent transaction, arrested the person driving the fraudulently financed vehicle, obtained his recorded confession identifying Dayana Hall as the perpetrator, recovered the vehicle, and notified Capital One directly that the vehicle was in police custody. Capital One reviewed none of this. It looked at its own documents—documents Dayana Hall had forged—and concluded the fraud did not happen.

94.     Capital One thereafter continued to report the Fraudulent Account to TransUnion and, on information and belief, to other consumer reporting agencies as a valid obligation of Plaintiff.

95.     Capital One's conduct constituted willful noncompliance with the FCRA within the meaning of 15 U.S.C. § 1681n.

96.     An investigation process that examines only the furnisher's own origination records while ignoring an arrest, a recorded confession, and direct law enforcement notification reflects reckless disregard of § 1681s-2(b)'s requirements and of the rights of identity theft victims.

97.     In the alternative, Capital One's conduct constituted negligent noncompliance within the meaning of 15 U.S.C. § 1681o.

98.     Capital One's violations caused Plaintiff actual damages including a lowered credit score; lost credit opportunity; damage to reputation; ongoing risk of credit denials and adverse financial consequences; emotional distress, anxiety, frustration, and out-of-pocket expenses incurred in dealing with the continued reporting of the Fraudulent Account and preparing repeat disputes—all of which would have been unnecessary had Capital One conducted a reasonable investigation.

99.     Plaintiff has spent substantial time and effort trying to correct the record, including preparing multiple disputes, compiling documentation, communicating with credit bureaus and legal counsel, and monitoring her credit reports—all of which would have been unnecessary had Capital One fulfilled its legal duties.

100.    The continued presence of the inaccurate account on Plaintiff's credit report further created ongoing anxiety, reputational harm, and fear of further collection activity—despite Plaintiff being a victim of fraud through no fault of her own.

101.   Because Capital One's actions and omissions were willful and reckless, it is liable to Plaintiff for actual damages, punitive damages, and statutory damages under 15 U.S.C. § 1681n.

102.   In the alternative, Plaintiff is entitled to recover actual damages pursuant to 15 U.S.C. § 1681o.

103.   Plaintiff is entitled to recover costs and attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o.

## Relief Requested

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment against all Defendants for all of the following:

a.   Actual damages.

b.   Statutory damages.

c.   Punitive damages.

d.   Reasonable attorney's fees and costs.

e.   Prejudgment and post judgment interest.

f.   Any other relief that the Court may deem proper.

**Plaintiff respectfully demands trial by jury.**

Dated: March 15, 2026,                          Respectfully submitted,

*/s/ Darren R. Newhart*
Darren R. Newhart, Esq.
FL Bar No: 0115546
NEWHART LEGAL, P.A.
14611 Southern Blvd, Suite 1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile:  (561) 473-2946

15